# Hand, *et al. v.* Stapleton, *et al.*

*Bill to Enjoin the Officers and Court House Commissioners from Removing Court House.*

(DECIDED DEC. 19, 1905, 39 So. REP. 651.)

1. *Courts; Force of Former Decisions.*—The construction placed upon a statute by a former decision will not be disturbed, unless there are cogent reasons for holding the former construction erroneous; but where the interests involved are considerable and the former adjudication was by a divided court, this court will re-examine the question.

2. *Counties; Removal of Court House; Statute; Construction.*—Construing together the provisions of Act approved Feb. 5, 1901 (Acts 1900-01, p. 754) we hold that under it, it is the duty of the court house commissioners to ascertain what the building contemplated by the act would cost; whether they could so arrange the payments for the same that a portion of the money could be paid in annual installments; then by conference with the county commissioners, ascertain what amount per year they could contribute without raising the tax rate; and, if by utilizing these payments the buildings could be erected, they are to proceed to erect the same.

[Hand, *et al. v.* Stapleton, et al.]

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

This is the third appeal in this case. The first appeal is reported in 135 Ala. p. 156, and the second in 140 Ala. p. 555. These two repeals are referred to here for the settlement of the pleadings in the case and as showing th contention of the parties and the facts concerning the same. This appeal is from a final decree on an amended bill in which it is contended that the act sought to be construed is a valid legislature enactment, but never became effective because of a failure of the commissioners to ascertains the facts necessary to give the court-house commissioners authority to perform the duties imposed upon them by the said act. The case was submitted on the pleadings and an agreed statement of facts: That all of the complainants owned property in Baldwin county subject to taxation at the time the bill of complaint was filed and that state and county taxes had been assessed thereon and paid by them; that each of them have ever since owned property in said state and county upon which taxes have been assessed to each of them yearly. That since the bill of complaint was filed, defendant, Charles Hall, ceased to be the judge of the probate court of Baldwin county, and that John H. Smith, has been elected and has qualified as judge of probate of said county in lieu of said Charles Hall; that since the bill of complaint was filed defendants Aaron Moog, B. Thomley, R. D. McConnell and M. O. Underwood have each ceased to be members of the county commissioners of Baldwin county, and Frank Bryars, O. K. McMillan, Thomas J. Holman and Patrick J. Cooney have been elected in their stead, and now constitute the county commissioners of Baldwin county, Alabama. That on the 11th day of Feb. 1901, the court of county commissioners of Baldwin county met at the court house of Baldwin county and took action as shown by the following copy of the minutes of their proceedings: "Commissioners" court, February term, 1901. Honorable Charles Hall, Aaron Moog, W. B. Thomley and R. D. McConnell, county commissioners, present:

On motion of R. D. McConnell, which was seconded by W. B. Thomley, the said court, in open court, did ascer-

tain and certify as provided for under the act of the General assembly of the State of Alabama, approved Feb. 5th, 1901, providing for the removal of the county seat of Baldwin county in the state of Alabama from Daphne in said county to Bay Minette in said county, to the board of commissioners appointed by said act as a board of commissioners for the performance of the duties enjoined and conferred upon them by the said act of February 4th, 1901, that they can contribute and do hereby contribute to the building of the courthouse and jail at Bay Minette in said county of Baldiwn, the sum of $2,500 and the judge of probate is hereby authorized and directed to draw a warrant on the county treasurer to the amount so allowed." Pursuant to this resolution, a warrant was drawn upon the treasurer of the county of Baldwin in favor of the courthouse commissioners and was paid and the rate of taxation for that year was not increased. (Here follows a record of the meetings of the court house commissioners showing what was done in reference to the contract, the building of the court house and jail, the final settlement with the contractor, and an adjournment sine die of the commissioners.) That prior to the meeting held by the court house commissioners on April 1st, 1901, they had obtained solvent subscriptions for the purpose of building the court house and jail at Bay Minette in a sum of more than three thousand dollars, and also a donation of a proper site therefor, deeds in fee to which had been made to Baldwin county; that a sale of the court house and jail at Daphne, Ala., had been sold to the county of Baldwin for six thousand dollars under the provisions of an act of the General Assembly of Alabama, approved May 2, 1901, to establish a high grade public school for white children, and had received in payment therefor warrants in the sum of two thousand dollars each payable on the 15th day of November, 1902-3-4 respectively, and had determined that it would require an additional payment of ten thousand dollars by the county of Baldwin to complete said court house, and that the said county could contribute the sum of $2,500 in the year 1901 without increasing the then rate of taxation and

could contribute the remaining sum of ten thousand dollars without increasing the then rate of taxation by making the said sum payable in installments of one thousand dollars each, payable on the 15th day of November, 1905 and on the 15th day of each succeeding November until the entire sum was paid; that neither the court house commissioners nor the commissioners court ascertained or determined that the county of Baldwin could contribute without increasing the tax rate of said county, during the year 1901, the whole sum necessary in addition to solvent donations secured and the amount which could be realized from the sale of the court house and jail and the real estate owned by the county at Daphne, to build a court house at Bay Minette except by the process which was actually adopted; that is to say, by devoting twenty-five hundred dollars of the county funds then on hand for that purpose, and by giving for the remainder of said sum the county's warrants maturing at the rate of one thousand dollars per year beginning Nov. 15th, 1905; that such additional sum was not then on hand and could not be raised during said year of 1901, without increasing said tax rate of said county. (Here follows a resolution of the board of county commissioners authorizing the issuance of the ten warrants payable as set out above.)　It is then shown that the court house and jail were constructed and paid for as above set out, and all the books, records papers and officers removed from Daphne to Bay Minette and that the prisoners were removed from the jail at Daphne to Bay Minette; together with the amount of subscriptions, the amount of cash paid directly out of the treasury, the amount realized from the sale of property at Daphne. It is further shown that the warrant for twenty-five hundred dollars and two of the warrants for two thousand dollars each issued in　payment　of the　property　at Daphne, have been paid, but that none of the one thousand dollars warrants have been paid; that the act of the Legislature of Alabama approved March 4, 1903, (local acts, 1903, p. 168) is set out in full and made a part of the agreed statement of facts, and it is agreed that either party may introduce upon the trial of said cause

[Hand, *et al. v.* Stapleton, et al.]

these facts subject to legal objections and exceptions other than the method of proving said facts. Upon a final decree, the chancellor held that the complainants were entitled to the relief prayed and enjoined the payment of all of the warrants issued, and also enjoined the contractors from attempting to enforce the contract.

STEVENS & LYONS and ERVIN & MCALEER, for appellant.—The amendment to the bill was a clear departure and while our practice relative to amendments in very liberal, it does not permit any such departure as that pointed out.—*Winston v. Mitchell*, 93 Ala. 554; *Caldwell v. King*, 76 Ala. 149; *Park v. Lide*, 90 Ala. 252; *Gordon v. Ross*, 63 Ala. 365; *Savings Bank v. Burke*, 94 Ala. 128; *Ward v. Patton*, 75 Ala. 208; *Ray v. Wamble*, 56 Ala. 37; *Micou v. Ashurst*, 55 Ala. 612.

The prayer of this bill cannot be granted unless the statute legalizing and making valid the acts of the county and court house commissioners is to be given no effect. Curative legislation of this character is generally upheld and given retroactive effect.—8 Cyc. 1024, Sec. E. and cases cited in note; *Steele Co. v. Erskine*, 98 Fed. 215; *Williams v. Board, etc.*, 21 Fed. 99; *Granniss v. Cherokee*, 47 Fed. 427; *Lovejoy v. Beeson*, 121 Ala. 607; *Thompson v. Lee County*, 3 Wall 327, L. Edition (18) p. 127; *Bell v. F. & P. R. R. Co.*, 20 S. E. 942; *People v. Mitchell*, 35 N. Y. 551; *State v. Union*, 33 N. Y. L. 350. In many instances, healing statutes have been held valid as to transaction between private persons.—8 Cyc. 1026, Sec. F. and note. Consequently, there is a field of operation for the constitutional provision without invading the realms of public affairs.

If a county can be hampered in discharging its just obligation so can the State, for the county is but a governmental agency of the state.—*Askew v. Hale County*, 54 Ala. 639; *Marengo County v. Coleman*, 55 Ala. 607; *Chambers County v. Lee County*, 55 Ala. 534; *Dunn v. Wilcox County*, 85 Ala. 144. The courts of this state cannot enjoin the payment of the county warrants shown to have been issued without having before it as parties to the case the holders of the warrant, especially

[Hand, *et al. v.* Stapleton, et al.]

where the warrants are shown to be outstanding.—10 Am. & Eng. Ency. P and P p. 912; *Smith v. Crissey,* 66 How. Pr. (N. Y.) 112; *Hutchinson v. Burr,* 12 Cal. 103; *Patterson v. Yuba County,* 12 Cal. 105; *Hope v. Gainesville,* 72 Ga. 246.

If it appear that there is no threatened illegal disposition of the public fund, because the proposed payments are now authorized, then this bill should be dismissed, because its equity rests exclusively upon the doctrine that a tax payer may enjoin a threatened illegal disposition of the public fund.—*McMillan v. Butler,* 15 Kan. 62; *N. O. M. & C. R. R. Co. v. Dunn,* 51 Ala. 28; *Allen v. Lafayette,* 89 Ala. 641; High on Injunctions, section 1258; Dillon's Municipal Corporations, Sec. 914 et seq.

Statutes are to be so construed, if possible, as to give some effect to every clause and not to place one portion in antagonism to another. A construction which leaves to a sentence of a clause of a statute no field of operation should be avoided, if any other reasonable construction of the language can be given.—*Lerman Durr & Co. v. Robinson,* 59 Ala. 334; *Sale v. State,* 68 Ala. 534; 26 Am. & Eng. Ency. of Law (2nd Ed.) 618.

All clauses or parts of the statute which have a limiting or qualifying effect upon a general enacting clause must be strictly construed and held not to restrict the general clause further than is clearly expressed.—*Bragg v. Clark,* 50 Ala. 363; *United States v. Dickson,* 15 Peters, 141.

GREGORY L. and H. T. SMITH, for appellee.—The supreme court having already in two former opinions placed its construction upon the statute, the doctrine of *stare decisis* is applicable, and the former constitution should not be disturbed.—*Schneider v. Burk,* 84 Ala. 57; *Martin's case,* 76 Ala. 16; *Herstein v. Walker,* 85 Ala. 32; *Windham v. Chetwynde,* 1 Burrows, 419.

A former decision construing a particular statute or instrument by which property rights are acquired, will not be disturbed as to such rights, although the court should deem them wrong on the subsequent hearing.—

*American Mortgage Co. v. Boyd,* 92 Ala. 139; *Goodwin v. Sims,* 86 Ala. 102; *Gulf City Street Lumber Co. v. O'Neil,* 101 Ala. 132; *Nannock v. Houghton,* 7 Vesey, Jr., 398; *Davies v. Thornes,* 2 Jex. S. M. 342. The validating act is unconstitutional, 1st, because it is violative of secton 95 of the constitution of 1901 as it was adopted after the bill was filed in this case; and 2nd, because it was equivalent to a local act changing the county seat and was violative of subsection 11 of section 104 of the constitution of 1901.

The improper allowance of an amendment does not constitute a revisable error unless it is properly raised in the court below.—*Stewart v. Goode,* 29 Ala. 476; *Bryan v. Wilson,* 27 Ala. 208; *Telkel v. Hicks,* 32 Ala. 25. The present appellants are in no wise entitled to raise the question of departure in any manner, for the reason that after decree *pro confesso* against them, they were granted leave to file their answer, but not to demur, and their predecessors in office had been ordered to answer and were not at liberty to demur further without special leave, and the successors were bound by the pleadings of their predecessors as they stood at the time of the revivor.—20 Am. & Eng. Ency P. and P. 1037. But even if the defendants were at liberty to raise the question, they did not adopt the proper method of doing so, as the demurrers were but general demurrers.—*Gould v. Hayes,* 19 Ala. 434; *Pate v. Hinson,* 101 Ala. 599.

The question of departure cannot be raised by demurrer, but must be raised by motion.—*Turner v. Rountree,* 30 Ala. 706; *T. & C. R. R. Co. v. Danforth, and Armstrong,* 112 Ala. 80; *L. & N. R. R. Co. v. Barker,* 96 Ala. 435; *Freeman v. Speegler,* 83 Ala. 191; *James v. Vicors,* 119 Ala. 32.

There was no departure. Anything may be added on by amendment which could have been stated in the original bill as an alternative basis of relief and any two things may be stated in the alternative either of which will entitle the complainant to the same relief.—*Winston v. Mitchell,* 93 Ala. 554; *Caldwell v. King,* 76 Ala. 149; *Cain v. Gimon,* 86 Ala. 173; *Blackwell v. Blackwell,* 33 Ala. 63.

[Hand, *et al. v.* Stapleton, et al.]

Very much more radical amendments have been frequently approved by this court.—*Fite, Porter & Co. v. Cannamer,* 90 Ala. 470; *S. F. & M. Insurance Co. v. De-Jarnette,* 111 Ala. 248; *Smith v. Hiles,* 107 Ala. 275; *Milner v. Stanford,* 102 Ala. 277; *Hart v. Clark,* 54 Ala. 493.

SIMPSON, J.—The decision of this case depends in a large measure on the construction to be given to the act of February 5, 1901, for the removal of the county seat of Baldwin county. Acts 1900-01, p. 754. As this matter has been before this court twice, and the decisions concur in the construction of this act, the construction which this court has placed upon said act should not be disturbed, unless there are cogent reasons for holding that the former construction was erroneous; but the magnitude and importance of the interests involved, and the fact that the last decision was by a divided court, suggest that it is proper to re-examine the question.

The first section of said act provides that the county seat of said county "is hereby permanently located in the town of Bay Minette." Sections 2, 3, 4 and 5 appoint the commissioners and authorize them to receive subscriptions, to sell certain property belonging to the county, and, when they have received solvent subscriptions amounting to $3,000 and a proper site, to advertise for plans and specifications and to award the contract for building the courthouse and jail on the 1st of April, 1901. Section 6 simply directs the commissioners' court at its February term to "ascertain and certify to the board of commissioners, * * * what amount of money" the county can contribute during the year 1901 without increasing the tax of said county. It does not give any intimation why this requirement is made, nor does it suggest that this is all that the county is ever to appropriate to the building of the courthouse. The only restriction is that the amount so appropriated shall not necessitate the raising of the tax rate, which really could not be done during that tax year, as the rate had already been fixed. If the legislature had intended that no more money should be appropriated by the county, it would

[Hand, *et al. v.* Stapleton, et al.]

have been very easy. and natural to have simply stated that if the other amounts raised, together with the amount thus appropriated by the county, were not sufficient to pay for the buildings, the act was not to go into effect. It does not do so, but goes on in section 7 to provide that the county shall pay all the expenses of removal and building, provided, not that the amount so appropriated, with other funds, shall be sufficient, but that the amount necessary "is on hand, or can be raised by said county without increasing the tax rate." It is evident that at the time of building the amount contributed in 1901 would be already "on hand," so that the reference to what "can be raised by said county" must refer to the future, indicating that the county was to raise other sums in the future; the only limit being that it must not necessitate an increase in the tax rate. Then the tenth section places the entire matter in the hands of the court-house commissioners, and provides that, with the exception of the preliminary matters committed to them, the act shall not take effect until it is ascertained by them that the amount "to be paid" by the county, in addition to the other sums to be used, "will not require an increase on the present tax rate of said county to pay the same." This cannot possibly refer to the amount contributed by the county in 1901, for that would be already "raised" and paid by the commissioners, and not "to be paid," and in raising it the county commissioners would have already ascertained that it could be paid without increasing the tax rate. The duty as to that amount was placed on the county commissioners, not on the court-house commissioners. It would be meaningless, then, to require the courthouse commissioners to ascertain whether the payment of that amount by the county would necessitate an increase of the tax rate.

Giving a field of operation to all of the sections of the act, it is evident that the courthouse commissioners were to ascertain what the buildings would cost, whether they could so arrange the payments for the same that a portion of the money could be paid in yearly installments, then by conference with the county commissioners what amounts they could contribute annually without necessi-

[Hand, *et al. v.* Stapleton, et al.]

tating an increase of the tax rate, and if by utilizing those payments, with other funds on hand, the building could be erected, they were to proceed with the erection of the same.   As said by Justice TYSON in his dissenting opinion (140 Ala. 560, 37 South. 362), "the whole context of the act shows that the legislature did not contemplate that the new courthouse and jail would or could be built with the county contribution limited to what the taxes of 1901 would enable the court of county commissioners to contribute.   The single purpose of the legislative restriction was that the object should be accomplished without the necessity of increasing the then tax rate, and the nature of the undertaking and the words of the statute show that the use of taxes for future years at the same rate was contemplated."   It is shown, from the evidence in the case, that said courthouse commissioners have legally and properly ascertained the facts necessary to make the act effectual, and have properly proceeded in accordance with the powers conferred upon them to have the buildings referred to in said act erected.   The case of *Hand et al. v. Stapleton,* 135 Ala. 161, 33 South. 689, and the same case in 140 Ala. 560, 37 South. 362, in so far as they conflict with this opinion are overruled. A decree will be here rendered, reversing the decree of the chancery court, dissolving the injunction heretofore granted, and dismissing the blil.

Reversed and rendered.

HARALSON, TYSON, DOWDELL, ANDERSON, and DENSON, JJ., concur.